**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

     Plaintiff,

     v.                                Case No. 15-CR-20098-JAR

GERREN LOVE,

     Defendant.

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Gerren Love's Objection Number One and Objection Number Two to the Presentence Investigation Report ("PSR") (Doc. 26), as well as Defendant's Additional Objection to Presentence Investigation Report (Doc. 51) ("Objection Number Three"). As to Objection Number One, Defendant objects to Paragraph 18, which calculates his base offense level as 24 pursuant to United States Sentencing Guidelines ("USSG") § 2K2.1(a)(2). Defendant also objects to Paragraph 24, which is an enhancement under the Armed Career Criminal Act ("ACCA").[1] Due to his eligibility for the ACCA, his offense level was adjusted to 33 pursuant to USSG § 4B1.4. As to Objection Number Two, Defendant argues that, based on his Objection Number One, he should have a total offense level of 17 and a criminal history category of IV. As to Objection Number Three, Defendant argues that his 2013 conviction for possession with intent to distribute methamphetamine under K.S.A. § 21-5705(a)(1) cannot qualify as a "controlled substance offense" under USSG § 4B1.1 or a "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii).

---

[1] 18 U.S.C. § 924(e).

In support of his Objections, Defendant has filed a Sentencing Memorandum (Doc. 34) and the parties have filed several responses and replies.[2]  The Court held a sentencing hearing and heard oral argument on Defendant's Objections Numbers One and Two on November 17, 2016, at which time the Court took the objections under advisement.  After considering the objections and responses in the PSR, the sentencing memorandum responses and replies, and the parties' arguments at the November 17 hearing, the Court is prepared to rule.  For the reasons stated below, Defendant's Objection Number One to the PSR is **overruled** as to application of USSG § 2K2.1(a) and the ACCA.  Because USSG § 2K2.1(a) and the ACCA apply, Objection Number Two is also **overruled**.  Defendant's Objection Number Three is **sustained**.

## I.      Background

Defendant pleaded guilty on April 13, 2016 to knowingly and unlawfully possessing, as a felon, a firearm that had been transported in interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) on October 11, 2015.[3]  Prior to Defendant's sentencing hearing, the United States Probation Office filed a PSR, in which it calculated Defendant's base offense level as 24 pursuant to USSG § 2K2.1(a).[4]  Section 2K2.1(a) describes the applicable base offense levels for offenses under § 922(g)(1), and provides that an offense involving a felon in possession of a firearm subsequent to sustaining two felony convictions of either a crime of violence or a controlled substance offense results in a base offense level of 24.[5]

Further, the PSR enhanced Defendant's sentence because Defendant had at least three prior convictions for a violent felony or serious drug offense, or both, which subjected him to the

---

[2] Doc. 43, 45, 47, 49.

[3] Doc. 19.

[4] Doc. 26 at 5.

[5] USSG § 2K2.1(a)(4).

ACCA.[6]  His offense level was calculated at 33 under USSG § 4B1.4.  Defendant received a two-level decrease under USSG § 3E1.1(a) for accepting responsibility for the offense and a one-level decrease under USSG § 3E1.1(b).  Thus, the total offense level was 30.

The PSR identified three felony convictions that qualified as crimes of violence or controlled substance offenses under § 2K2.1(a)—

(1) a 1998 Kansas state conviction for aggravated battery and aggravated assault;
(2) a 2000 Kansas state conviction for second-degree murder, and
(3) a 2013 Kansas state conviction for cultivation/ distribution/ possession with intent to distribute methamphetamine.

Further, the PSR identified four felony convictions that qualified as violent felonies or controlled substance offenses for purposes of the ACCA—

(1) a 1991 Kansas state conviction for attempted first-degree murder;
(2) a 1998 Kansas state conviction for aggravated battery and aggravated assault;
(3) a 2000 Kansas state conviction for second-degree murder, and
(4) a 2013 Kansas state conviction for cultivation/ distribution/ possession with intent to distribute methamphetamine.

Defendant initially conceded that his conviction for possession with intent to distribute methamphetamine was a qualifying drug offense under § 2K2.1 and the ACCA.[7]  Defendant, however, has since filed an additional objection challenging the applicability of § 2K2.1 and the ACCA to this offense.[8]  The Government has conceded that the attempted first-degree murder conviction and the aggravated assault conviction are not violent felonies for purposes of the ACCA or crimes of violence for purposes of § 2K1.2(a).[9]  Thus, the prior convictions at issue are: (1) the second-degree murder conviction; (2) the aggravated battery conviction; and (3) the possession with intent to distribute methamphetamine conviction.

---

[6] 18 U.S.C. § 924(e).

[7] Doc. 45 at 1.

[8] Doc. 51.

[9] Doc. 43 at 4; Doc. 47 at 1.

## II.     Discussion

### A.     Objection Numbers One and Two

Defendant contests the application of two Guideline provisions in Objection Number One in the PSR—(1) USSG § 2K2.1 and (2) the ACCA as applied through USSG § 4B1.4.  Under USSG § 2K2.1, Defendant receives a base offense level of 24 if the defendant committed any part of the instant offense subsequent to attaining two felony convictions of a *crime of violence* or a controlled substance offense as defined in USSG § 4B1.2(a) and Application Note 1 of the commentary to § 4B1.2.  Under the ACCA, a defendant who violates 18 U.S.C. § 922(g) is an armed career criminal subject to a mandatory minimum of 15 years imprisonment if "[Defendant] has three previous convictions by any court referred to in section 922(g)(1) of this title for a *violent felony* or a serious drug offense, or both, committed on occasions different from one another . . . ."[10]  For the reasoning explained more fully below, the Court overrules Objection Number One to the PSR.[11]

### 1.     Defining Crimes of Violence or Violent Felonies

---

[10] 18 U.S.C. § 924(e)(1) (emphasis added).

[11] As a threshold matter, the parties dispute whether the 2015 or 2016 USSG apply in this case.  Under USSG § 1B1.11, courts are instructed to apply the version of the Guidelines in effect on the date that the defendant is sentenced.  However, if a court determines that the application of the current Guidelines would cause a violation of the Ex Post Facto Clause, the court must use the version of the Guidelines in effect on the date that the offense of conviction was committed.  *United States v. Cloyd*, No. 14-20118, 2016 WL 1718861, at *6 (D. Kan. Apr. 5, 2016).  Defendant argues the 2016 USSG would violate the Ex Post Facto Clause in this case because it would result in a higher Guideline range.  Because the Court only reaches the issue of the elements clause, which is the same in the 2015 and 2016 USSG, it is irrelevant the version used.

The definition of crime of violence and violent felony is what is at issue in this case. Crime of violence (as used in USSG § 2K2.1 and defined in USSG § 4B1.2)[12] and violent felony (as used in the ACCA) are defined as an offense that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[13]

The Supreme Court in *United States v. Johnson* held that the residual clause of the ACCA, which provides that violent felonies include crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another," is unconstitutionally vague.[14] However, the Supreme Court in *Beckles v. United States* held that the identical residual clause of USSG § 4B1.2(a), which provides that crimes of violence include crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another," is not void for vagueness under the reasoning in *Johnson*.[15] Subsection 1 is commonly referred to as the "elements clause," and Subsection 2 before the residual clause is referred to as the "enumerated-offense clause."[16]

Prior to *Beckles*, the Tenth Circuit had consistently applied the same analysis to "crime of violence" under § 4B1.2 and "violent felony" under the analogous provision of the ACCA

---

[12] According to the Commentary for § 2K2.1, "crime of violence" has the meaning given to that term in § 4B1.2(a) and Application Note 1 to § 4B1.2. USSG § 2K2.1 cmt. 1.

[13] 18 U.S.C. § 924(c)(3); USSG § 4B1.2.

[14] *United States v. Johnson*, 135 S. Ct. 2551, 2557 (2015).

[15] *Beckles v. United States*, 137 S. Ct. 886, 892, 895 (2017) ("Unlike the ACCA, ... the advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range. Accordingly, the Guidelines are not subject to a vagueness challenge under the Due Process Clause. The residual clause in § 4B1.2(a)(2) therefore is not void for vagueness.").

[16] *United States v. Harris*, 844 F.3d 1260, 1262 (10th Cir. 2017).

because the clauses are "virtually identical."[17]  Although *Beckles* abrogated such a holding as to the residual clause, the Tenth Circuit has not intimated that courts should employ different approaches for the elements clause and the enumerated offense clause between § 4B1.2 and the ACCA.[18]  Thus, because the Court only reaches the application of the elements clause, the Court will consult cases analyzing the elements clause under USSG § 4B1.2 and the ACCA.  For purposes of clarity, the Court will refer to both violent felonies for purposes of the ACCA and crimes of violence for purposes of § 2K2.1 interchangeably as violent felonies.

### i.     The Elements Clause

The elements clause defines violent felonies as crimes that "[have] as an element the use, attempted use, or threatened use of physical force against the person of another."[19]  As the Tenth Circuit instructs, the Court must analyze federal law to define the meaning of "use, attempted use, or threatened use of physical force" and Kansas state law to define the meaning of the substantive elements of the crime.[20]  The elements clause has two requirements—the mens rea element[21] and the physical force element.[22]

Although "physical force" is not defined in the statute, in *Johnson v. United States*, the Supreme Court addressed the meaning of "physical force" in the definition of violent felony

---

[17] *United States v. Mitchell*, 653 F. App'x 639, 642 (10th Cir. 2016) (citing *United States v. Madrid*, 805 F.3d 1210, 1214 (10th Cir. 2015)).

[18] *United States v. Snyder*, 852 F.3d 972, 973 (10th Cir. 2017) (describing *Beckles* as only "partially abrogat[ing] [the Tenth Circuit's] decision in *United States v. Madrid*, 805 F.3d 1210 (10th Cir. 2015)").

[19] U.S.S.G. § 4B1.2.

[20] *See Harris*, 844 F.3d at 1264.  The Tenth Circuit instructed in *Harris* that "[f]ederal law defines the meaning of the phrase 'use, attempted use, or threatened use of physical force'" in § 924(e)(2)(B)(i), which is a statute identical to the language of § 4B1.2, and state law defines the substantive elements of the crime of conviction.  *Id.*; *see also United States v. Mitchell*, 653 F. App'x 639, 642 (10th Cir. 2016).

[21] *See United States v. Duran*, 696 F.3d 1089, 1093 (10th Cir. 2012) (quoting *United States v. Armijo*, 651 F.3d 1226, 1236 (10th Cir. 2012)) ("We have 'unequivocally held that the text of § 4B1.2 only reaches purposeful or intentional behavior.").

[22] *Johnson v. United States*, 559 U.S. 133 (2010).

under the ACCA.[23]  The Court began by noting that the adjective "physical" is clear: "[i]t plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force."[24]  The Court went on to define "force," as used under section 924(e)'s definition of "violent felony," as "*violent* force—that is force capable of causing physical pain or injury to another person."[25]  In so holding, the Court rejected the common law meaning of force in the context of § 924(e)—that is, "the slightest offensive touching"—holding that it would be a "comical misfit with the defined term."[26]

To determine whether a crime meets the elements clause, the Tenth Circuit instructs the court to employ a two-step inquiry.   First, "[the court] must identify the minimum 'force' required by [Kansas] law for the crime[s] [of second-degree murder and aggravated battery]."[27]  Second, the court must "determine if *that* force categorically fits the definition of physical force" required under the ACCA or § 4B1.2. [28]

### ii.    The Categorical or Modified Categorical Approach

To determine whether a particular felony is a violent felony, courts employ a categorical approach that "do[es] not consider the facts underlying the prior conviction."[29]  Using the categorical approach, the inquiry is whether the crime's elements satisfy the ACCA's definition of violent felony or § 4B1.2(a)'s definition of crime of violence.[30]  Courts only use the modified

---

[23] *Id.* at 140.

[24] *Id.* at 138.

[25] *Id.* at 140 ("[E]ven by itself, the word 'violent' . . . connotes a substantial degree of force. When the adjective 'violent' is attached to the noun 'felony' its connotation of strong physical force is even clearer." (internal citations omitted)).

[26] *Id.* at 145.

[27] *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017).

[28] *Id.* (emphasis in original).

[29] *United States v. Titties*, 852 F.3d 1257, 1265 (10th Cir. 2017).

[30] *Id.*

categorical approach when a statute is divisible, which means the statute of conviction "sets out one or more elements of the offense in the alternative."[31] The modified categorical approach "allows a court to peer around the statute of conviction and examine certain record documents underlying the defendant's prior offense."[32] When employing the modified categorical approach, "[c]ourts consult record documents from the defendant's prior case for the limited purpose of identifying which of the statute's alternative elements formed the basis of the prior conviction."[33] Once the court identifies the elements, courts "can then do what the categorical approach demands" and compare those to the ACCA or § 4B1.2 definitions.

First, Defendant was convicted of second-degree murder under K.S.A § 21-3402. K.S.A. § 21-3402(a) reads:

> Murder in the second degree is the killing of a human being committed:
>
> (a) Intentionally; or
> (b) Unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life.[34]

K.S.A. § 21-3402 is a divisible statute with multiple alternative elements, so the Court must employ the modified categorical approach. According to the entry of judgment, Defendant was convicted of second-degree murder (intentional) pursuant to K.S.A. § 21-3402(a).[35]

Second, Defendant was also convicted of aggravated battery under K.S.A. § 21-3414. K.S.A. § 21-3414 reads:

> Aggravated battery is:

---

[31] *Id.* at 1266 (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013)).

[32] *Id.* (citing *Descamps*, 133 S. Ct. 2284–85).

[33] *Id.*

[34] K.S.A. § 21-3402 (2000).

[35] Doc. 43-2.

(1)(A)Intentionally causing great bodily harm to another person or disfigurement of another person; or
(B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
(C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
(2)(A) recklessly causing great bodily harm to another person or disfigurement of another person; or
(B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted.[36]

K.S.A. § 21-3414 is a divisible statute with multiple alternative elements, so the Court must again employ the modified categorical approach. According to the journal entry for his aggravated assault and battery case, Defendant was convicted of a severity level 4 person felony. Because he was convicted of a severity level 4 person felony, Defendant was convicted of aggravated battery pursuant to K.S.A. § 21-3414(a)(1)(A).[37] Defendant does not contest that K.S.A. § 21-3402(a)(1)(A) is the subsection of conviction.[38] Thus, the Court must determine whether second degree murder under K.S.A. § 21-3402(a) and aggravated assault under K.S.A. § 21-3414(a)(1)(A) are violent felonies for purposes of the ACCA or crimes of violence for purposes of § 2K1.2.

## 2. Second-Degree Murder (K.S.A. § 21-3402(a))

---

[36] K.S.A. § 21-3414 (1998).

[37] The penalty provision for K.S.A. § 21-3414 provides:

Aggravated battery is described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. Aggravated batter as described in subsection (a)(2)(A) is a severity level 5, person felony. Aggravated battery as described in subsection (a)(2)(B) is a severity level 8, person felony.

K.S.A. § 21-3414(b) (1998).

[38] Doc. 34 at 33.

The Government makes one argument for application of the ACCA—second-degree murder as defined in K.S.A. § 21-3402(a) meets the elements clause as it has an element "the use, attempted use, or threatened use of physical force against the person of another." Alternatively, if the Court were to determine that the ACCA was inapplicable, the Government makes two arguments for application of USSG § 2K1.2—(1) second-degree murder meets the elements clause and (2) second-degree murders meets the generic definition of murder for purposes of meeting the enumerated offense clause.[39]  For the reasons detailed more fully below, the Court finds that second-degree murder under K.S.A. § 21-3402(a) meets the elements clause for purposes of the ACCA and § 2K1.2.  The Court does not reach the issue of application of the enumerated offense clause.

### i.        Indirect or Direct Application of Physical Force

Defendant argues that second-degree murder under K.S.A. § 21-3402(a) is not a violent felony under the elements clause because it does not have as an element "the use, attempted use, or threatened use of physical force."  Defendant makes this assertion based on Tenth Circuit case law subsequent to *Johnson* that distinguishes between statutes that require the application or threat of force as crimes of violence and statutes that focus on the resulting injury that are not crimes of violence.[40]  Based on this case law, Defendant argues that Kansas's second-degree murder statute does not have a force element because the crime focuses on the death of the victim instead of the force required to commit the offense.  Defendant uses the example of

---

[39] In the 2015 USSG, Application Note 1 to § 4B1.2 states that crimes of violence includes murder.  In the 2016 USSG, murder is explicitly listed in the enumerated offense clause.  Therefore, the Government argues murder is included as part of the enumerated offense clause, and second-degree murder meets the generic definition of murder.

[40] *United States v. Rodriguez-Enriquez*, 518 F.3d 1191 , 1195 (10th Cir. 2008) (concluding the court should "look to the means by which the injury occurs (the use of physical force), not the result of defendant's conduct, i.e., bodily injury.") (internal quotations omitted); *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005).

cutting the victim's brakeline or poisoning the victim's coffee as means to cause death without the application of physical force.[41]

The Government responds that the Court should not rely on the Tenth Circuit case law Defendant cited because its rationale has been abrogated by *United States v. Castleman*.[42] In *Castleman*, the Supreme Court considered the definition of "misdemeanor crime of domestic violence" in 18 U.S.C. § 922(g)(9).[43] Like crime of violence in § 4B1.2(a)(1) or violent felony in the ACCA, the term "misdemeanor crime of domestic violence" is defined to include offenses that have "as an element, the use or attempted use of physical force."[44] In *Castleman*, the Supreme Court attempted to synthesize the various definitions of physical, force, and use, and concluded:

> [A]s we explained in *Johnson,* "physical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual force or emotional force." 559 U.S., at 138, 130 S.Ct. 1265. And the common-law concept of "force" encompasses even its indirect application. "Force" in this sense "describ[es] one of the elements of the common-law crime of battery," *id.,* at 139, 130 S.Ct. 1265, and "[t]he force used" in battery "need not be applied directly to the body of the victim." 2 W. LaFave, Substantive Criminal Law § 16.2(b) (2d ed. 2003). "[A] battery may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance," such as a laser beam. *Ibid.* (footnote omitted) (citing *State v. Monroe,* 121 N.C. 677, 28 S.E. 547 (1897) (poison); *State v. Lankford,* 29 Del. 594, 102 A. 63 (1917) (disease); *Adams v. Commonwealth,* 33 Va.App. 463, 534 S.E.2d 347 (2000) (laser beam)). It is impossible to cause bodily injury without applying force in the common-law sense.
>
> Second, the knowing or intentional application of force is a "use" of force. Castleman is correct that under *Leocal v. Ashcroft,* 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." Brief for Respondent 37. But he errs in arguing that although "[p]oison may have 'forceful physical

---

[41] Doc. 34 at 20.

[42] 134 S. Ct. 1405 (2014).

[43] *Id.*

[44] 18 U.S.C. § 921(a)(33)(A)(ii).

properties' as a matter of organic chemistry, ... no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink," *ibid*. **The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.** *Leocal* held that the "use" of force must entail "a higher degree of intent than negligent or merely accidental conduct," 543 U.S., at 9, 125 S.Ct. 377; it did not hold that the word "use" somehow alters the meaning of "force."[45]

Justice Scalia, concurring in part and in the Court's judgment, noted that the Tennessee assault statute[46] that Castleman was convicted under would have satisfied even *Johnson*'s definition of "violent force" "since it is impossible to cause bodily injury without using force 'capable of' producing that result."[47] The *Castleman* majority expressly declined to reach the issue of "[w]hether or not the causation of bodily injury necessarily entails violent force."[48] For purposes of a misdemeanor crime of violence, in *Castleman*, and unlike in *Johnson*, the Court concluded that "force" should be given its common law meaning—namely, offensive touching.[49]

Several circuits have addressed whether *Castleman* applies to the ACCA and §4B1.2. The First Circuit,[50] the Third Circuit,[51] the Fourth Circuit,[52] the Seventh Circuit,[53] the Eighth

---

[45] *Castleman*, 134 S. Ct. at 1414–15 (emphasis added).

[46] Ten. Code Ann. § 39-13-11(b) (requiring the person to have "intentionally or knowingly cause[d] bodily injury to" the victim).

[47] *Id.* at 1416–17 (Scalia, J., concurring).

[48] *Id.* at 1413.

[49] *Id.* at 1411–13.

[50] *United States v. Edwards*, 857 F.3d 420, 426 (1st Cir. 2017) ("To the extent [the defendant] thinks knowingly using poison to cause physical harm is not a use of physical force, Supreme Court caselaw suggests the opposite.").

[51] *United States v. Chapman*, No. 16-1810, 2017 WL 3319287, at *5 (3d Cir. Aug. 4, 2017) (concluding "knowingly mailing a communication containing a threat to injure the person of the addressee or of another" falls within the elements clause); *United States v. Gorny*, 655 F. App'x 920, 925 (3d Cir. 2016) (concluding attempted aggravated assault ("attempt[ing] to cause or intentionally or knowingly caus[ing] bodily injury to another with a deadly weapon") under Pennsylvania law is a crime of violence).

Circuit,[54] the Eleventh Circuit,[55] and the D.C. Circuit[56] adopted or cited with approval *Castleman*'s definition of physical force in the ACCA and § 4B1.2 context, which would allow applications of direct or indirect force to qualify as physical force. The Second Circuit has adopted *Castleman*'s definition of physical force in determining whether Hobbs Act Robbery is a crime of violence for purposes of 18 U.S.C. § 924(c)(3).[57] The Ninth Circuit adopted *Castleman*'s definition of physical force in determining whether a prior Texas aggravated assault conviction constituted a crime of violence for purposes of USSG§ 2L1.2(b)(1)(A)(ii) sentencing enhancement to a sentence for illegal reentry after deportation.[58] However, the Fifth Circuit[59] and the Sixth Circuit[60] have declined to adopt *Castleman*'s definition outside of the misdemeanor

---

[52] *United States v. Burns-Johnson*, No. 16-4338, 2017 WL 3027872, at *4 (4th Cir. July 18, 2017) (concluding *Castleman* applies to the ACCA, so "even if North Carolina statutory armed robbery could be committed by use of poison, the crime necessarily still would entail the use, attempted use, or threatened use of violent physical force under the ACCA.").

[53] *United States v. Jennings*, 860 F.3d 450, 458–59 (7th Cir. 2017); *United States v. Waters*, 823 F.3d 1062 (7th Cir. 2016) (holding that enhanced domestic battery ("caus[ing] bodily harm to any family or household member; mak[ing] physical contact of an insulting or provoking nature with any family or household member") under Illinois law is a crime of violence); *United States v. Reid*, 861 F.3d 523, 527 (4th Cir. 2017) .

[54] *United States v. Lindsey*, 827 F.3d 733, 740 (8th Cir. 2017); *United States v. Winston*, 845 F.3d 876 (8th Cir. 2017); *United States v. Rice,* 813 F.3d 704 (8th Cir. 2016) (holding that a conviction for "caus[ing] physical injury" to another includes as an element the use of violent force capable of causing physical injury because "it is impossible to cause bodily injury without using force 'capable of' producing that result"); *United States v. Schaffer*, 818 F.3d 796 (8th Cir. 2016).

[55] *United States v. Haldemann*, 664 F. App'x 820, 822 (11th Cir. 2016) ("And whether that use of force occurs indirectly, rather than directly, by way of the defendant's actions is of no consequence because intentional use of indirect force to cause substantial bodily harm still qualifies as a use of violent force within the meaning of § 4B1.2's elements clause.").

[56] *United States v. Redrick*, 841 F.3d 478 (D.C. Cir. 2016) (concluding robbery with a deadly weapon constituted a violent felony because even if the weapon was "poison, an open flame, or lethal bacteria," there would be at least some level of physical force based on *Castleman*).

[57] *United States v. Hill*, 832 F.3d 135, 143 (2d Cir. 2016).

[58] *United States v. Calvillo-Palacios*, 860 F.3d 1285, 1288 (9th Cir. 2017).

[59] *United States v. Briceno*, 681 F. App'x 334, 338 (5th Cir. 2017) ("Considering the number of cases from Texas courts, including several instances where poisoning was not at issue, it is incorrect to say that the 'ordinary case' of criminal mischief requires destructive or violent force.").

[60] *United States v. Glover*, 681 F. App'x 432, 435 (6th Cir. 2017) (decling to adopt *Castleman*'s definition of physical force because "what the phrase may mean in the violent-felony section of the Code, it has a different

crime of domestic violence context.  At least three district courts in the Tenth Circuit, including this Court, have found that *Castleman* abrogates or limits *Perez-Vargas*'s holding.[61]

The Government argues that *Castleman* supports the proposition that (1) an indirect application of physical force constitutes a use of force under the ACCA and § 2K2.1(a), just as it does under § 921(a)(33)(A)(ii) for purposes of a "misdemeanor crime of domestic violence" and (2) if the quantum of physical force indirectly applied amounts to "violent force—that is, force capable of causing physical pain or injury to another person,"[62] then the indirect application of force qualifies as a violent felony under the elements clause.  Defendant responds that *Castleman*'s definition of physical force is inapplicable because it was in the context of defining a misdemeanor crime of domestic violence, and the Supreme Court has already declined to read the common law meaning of force into the ACCA's, and thereby § 4B1.2's, definition of violent felony or crime of violence.[63]  Therefore, Defendant argues that Tenth Circuit precedent is binding given *Castleman* is not contrary.[64]

### ii.    Recent Tenth Circuit Case Law on Application of Physical Force

Since the final briefing in this case, the Tenth Circuit has provided guidance on the meaning of physical force.  In *United States v. Harris*, the Tenth Circuit addressed whether

---

meaning and covers more conduct in § 921(a)(33)(A)'s domestic violence context"); *United States v. Gatson*, 776 F.3d 405, 411 (6th Cir. 2015) (declining to adopt *Castleman*'s definition for purposes of the ACCA, but holding that the domestic violence conviction was a violent felony because physical harm implies that physical force is used).

[61] *Sarracino v. United States*, No. 16-734, 2017 WL 3098262, at *7 (D.N.M. June 26, 2017); *United States v. Breshers*, No. 10-40107, 2017 WL 2378349 at *2 n.2 (D. Kan. June 1, 2017) (unpublished) (agreeing *Castleman* limited *Perez-Vargas*'s holding); *United States v. Pikyavit*, No. 16-CV-00729, 2017 WL 1288559 at *4–7 (D. Utah Apr. 6, 2017) (unpublished), appeal docketed, No. 17-4068 (10th Cir. May 1, 2017) (finding *Castleman* abrogated *Perez-Vargas*).

[62] *Johnson v. United States*, 559 U.S. 133, 140 (2010).

[63] *Castleman*, 134 S. Ct. at 1410 (quoting *Johnson*, 559 U.S. at 145 (describing the common law definition of force as a "comical misfit" with the definition of violent felony)).

[64] *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996) ("A published decision of one panel of this court constitutes binding circuit precedent constraining subsequent panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.").

Colorado's robbery statute "has an element the use, attempted use, or threatened use of physical force" for purposes of the ACCA.[65] In determining whether the robbery statute met the elements clause, the Tenth Circuit explained that the force element cannot be satisfied by the slightest offensive touching as would be understood in the common law battery context.[66] In construing the meaning of physical force, the Tenth Circuit references the Supreme Court requirement of a showing of "a substantial degree of force," "strong physical force," or "powerful force," which is different than the force for common law battery.[67] The Tenth Circuit cited Justice Scalia's concurrence in *Castleman* for the proposition that the force necessary to meet this showing could include conduct such as "[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling."[68] Ultimately, the Tenth Circuit defined physical force as "violent force, or force capable of causing physical pain or injury to another person."[69]

The Colorado robbery statute addressed in *Harris* allowed for conviction if a person "knowingly takes anything of value from the person or presence of another by the use of *force, threats, or intimidation.*"[70] When analyzing robbery by *force* in Colorado, the Tenth Circuit held that it "categorically matches the definition of 'physical force' assigned by the Supreme Court in

---

[65] 844 F.3d 1260, 1262 (10th Cir. 2017).

[66] *Id.* at 1265.

[67] *Id.*

[68] *Id.* (citation omitted). The Tenth Circuit explained in a footnote that *Castleman* differentiates between "violence," as construed in the ACCA and §4B1.2 context, and "domestic violence," as construed in *Castleman*. *Id.* at 1265 n.1. It noted that the Supreme Court was careful to explain in *Castleman* that:

> The Courts of Appeals have generally held that mere offensive touching cannot constitute the "physical force" necessary to a "crime of violence," just as we held in *Johnson* that it could not constitute the "physical force" necessary to a "violent felony." . . . Nothing in today's opinion casts doubt on these holdings, because—as we explain—"domestic violence" encompasses a range of force broader than that which constitutes "violence.

> *Castleman*, 134 S. Ct. at 1411 n.4 (citations omitted).

[69] *Harris*, 844 F.3d at 1266.

[70] *Id.* (citing Colo. Rev. Stat. § 18-4-301(1)).

*Johnson*[].”[71]  The Tenth Circuit went on to conclude in dicta that robbery by constructive force—i.e. *threats or intimidation*—also required the use or threatened use of force for purposes of meeting the definition of physical force.[72]  The Tenth Circuit found it "more theoretical than realistic that conduct (or threatened conduct) not equating to physical force would be prosecuted as robbery in Colorado" based on Colorado case law, so robbery in Colorado was found a violent felony for purposes of the ACCA.[73]

By contrast, in *United States v. Nicholas*, the Tenth Circuit addressed whether the degree of force required to commit robbery in Kansas rose to the level of physical force to establish a violent felony for purposes of the ACCA.[74]  Defendant was convicted under K.S.A. § 21-3426 (1999), which defined robbery as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person."  First, the Tenth Circuit determined based on Kansas case law that Kansas robbery was satisfied with de minimis physical contact, including mere purse snatching supporting a conviction.[75]  Second, the Tenth Circuit concluded that Kansas robbery does not necessarily require the use, attempted use, or threatened use of violent force.  It came to this conclusion based on other circuits determining similar robbery statutes to not be violent felonies.[76]  And, it distinguished the Kansas robbery statute from *Harris* and

---

[71] *Id.* at 1268.

[72] *Id.* at 1268–69.  The Tenth Circuit supported this finding with a Colorado Supreme Court case construing robbery by intimidated as involving "the use of force or violence" for purposes of Colorado's felon-in-possession statute.  *Id.* at 1269 (citing *People v. Jenkins*, 559 P.2d 912, 913 (Colo. 1979)).  Also, the Tenth Circuit observed that Colorado had rejected the notion that "threats against property (i.e. by extortionist means) can support a robbery conviction."  *Id.* at 1270.  It concluded that Colorado would not prosecute threats against property, or intimidation by means not implicating bodily harm as robbery.  *Id.*  Judge David Ebels filed a dissent in *Harris* to which he concluded that threats or intimidation do not qualify as a violent felony.  *Id.* at 1271 (Ebels J., dissenting).

[73] *Id.*

[74] No. 16-3043, 2017 WL 1429788, at *3 (10th Cir. Apr. 24, 2017).

[75] *Id.* at *4 (citing *State v. McKinney*, 961 P.2d 1 (Kan. 1998)).

[76] *Id.* (citing *United States v. Eason*, 829 F.3d 633, 640 – 42 (8th Cir. 2016) (Arkansas robbery); *United States v. Gardner*, 823 F.3d 793, 803–04 (4th Cir. 2016) (North Carolina robbery); *United States v. Parnell*, 818 F.3d 974, 979 (9th Cir. 2016) (Massachusetts armed robbery)).

similarly worded robbery statutes based on the lack of an explicit element of violence in the statute or state authority demonstrating a reasonable probability that state courts would apply the statute to non-violent conduct.[77]

Following the guidance in *Harris* and *Nicholas*, the Tenth Circuit has applied the physical force inquiry to several other statutes. In *United States v. Lee*, the Tenth Circuit held that Florida's statute for resisting, obstructing, or opposing an officer with violence, which required "knowingly and willfully resisting, obstructing or opposing the execution of legal process, by offering or doing violence to the person of the officer," was not a violent felony.[78] The Tenth Circuit came to this conclusion because the minimum conduct criminalized in Florida included "wiggling and struggling" or "clipping an officer's hand with a rearview mirror," which was not violent force.[79]

In *United States v. Ama*, the Tenth Circuit considered whether a federal criminal statute that makes it unlawful to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" a federal employee or officer while he or she performed official duties requires physical force for purposes of the ACCA.[80] The Tenth Circuit determined that conduct sustaining a conviction included: spitting and throwing liquid substances on a federal employee, chasing after and bumping into a federal employee so long as some force was used, and jolting a federal employee's arm.[81] Based on this, the Tenth Circuit concluded that "mere forcible contact

---

[77] *Id.* at *5 (citing *Harris*, 844 F.3d at 1266–70; *United States v. Priddy*, 808 F.3d 676, 686 (6th Cir. 2015) (Tennessee robbery); *United States v. Duncan*, 833 F.3d 751, 754–58 (7th Cir. 2016) (Indiana robbery); *United States v. Doctor*, 842 F.3d 306, 308–12 (4th Cir. 2016)).

[78] No. 16-6288, 2017 WL 2829372, at *2, 4 (10th Cir. June 30, 2017).

[79] *Id.* at *4.

[80] No. 16-4039, 2017 WL 1325247, at *4 (10th Cir. Apr. 11, 2017)

[81] *Id.*

suffices to sustain a conviction," and that, accordingly, "a felony conviction under [the federal statute] is not a violent felony."[82]

In *United States v. Hammons*, the Tenth Circuit considered whether "the intentional discharge of any kind of firearm, crossbow, or other weapon in conscious disregard for the safety of another" had as an element physical force.[83]  The government argued that "other weapons" could be an instrument that deploys hazardous chemicals, which would be indirect physical force rather than physical force.[84]  The Tenth Circuit rejected such an argument because discharge implied physical action, the legislature intended to punish willful use of force or violence when it enacted the statute, and the chemical weapon example was "legal imagination" rather than a probability.[85]  Thus, the Tenth Circuit found an element of physical force, so this qualified as a violent felony.[86]  Most importantly, the Tenth Circuit suggested in dicta that *United States v. Rodriguez-Enriquez*, which holds indirect means of physical force are not a use of physical force,[87] may not be good law in light of *Castleman*.[88]

### iii.    Kansas Law on Second-Degree Murder

With the definition of physical force provided in *Harris* and *Nicholas*, the Court may turn to whether Kansas's second-degree murder statute has as an element "the use, attempted use, or threatened use of physical force."  First, the Court must determine the minimum force necessary

---

[82] *Id.* at *5.

[83] 862 F.3d 1052, 1052 (10th Cir. 2017).

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] 518 F.3d 1191 (10th Cir. 2008) (holding that "injury effected by chemical action on the body (as in poisoning or exposure to hazardous chemicals) should not be described as caused by physical force").

[88] 862 F.3d at 1052 n.5 ("There may be some question whether Rodriguez–Enriquez remains good law in light of subsequent Supreme Court decisions addressing the degree of physical force required under similar statutes.").

under Kansas law to support a second-degree murder conviction under K.S.A. § 21-3402(a). To be convicted of second-degree murder in Kansas, subsection (a) requires "the killing of a human being committed . . . [i]ntentionally."[89] The elements of subsection (a) are (1) death of a human being, (2) intent to kill, and (3) causation.[90]

Based on these elements, the Court must start with the Kansas Supreme Court's recent interpretation of the second-degree murder statute. Kansas case law is sparse regarding the force necessary, if any, to sustain a conviction. In *State v. Deal*, the Kansas Supreme Court announced that the focus on the statute was on whether the killing—i.e. the result—was intentional.[91] It explicitly rejected the argument that the statute focused on the *conduct* being intentional as opposed to whether the *result* (killing) was intentional.[92] "K.S.A. § 21-3402 focuses culpability on whether a killing is intentional or unintentional, not on whether a deliberate and voluntary act leads to death."[93] The Kansas Supreme Court has explained that "while a conviction for intentional-second-degree murder requires proof that the defendant intentionally killed a human being, this specific intent may be proven by the acts of the defendant and the inferences deducible from those acts."[94] For example, where the defendant stabbed the victim in the heart, the jury could reasonably deduce that the defendant had intended to kill.[95]

Defendant does not point the Court to second-degree murder convictions sustained for indirect applications of force, like poisoning, walling someone in a crypt, or pushing a barricade

---

[89] K.S.A. § 21-3402. Second-degree murder was recodified at K.S.A. § 21-5403 in 2011, so the Court will employ case law analyzing both statutes.

[90] *State v. McCown*, 957 P.2d 401, 407 (Kan. 1998).

[91] 269 P.3d 1282, 1289 (Kan. 2012).

[92] *Id.* at 1290.

[93] *Id.*

[94] 927 P.2d 503, 507 (Kan. Ct. App. 1996) (citing *State v. Shannon*, 905 P.2d 649 (Kan. 1995); *State v. Pratt*, 876 P.2d 1390 (Kan. 1994)).

[95] *See id.*

in front of a moving car. While it may be possible for the statute to be satisfied by such conduct

and the language above does not suggest to the contrary, the Court finds that prosecution from

employing such conduct to commit second-degree murder is "legal imagination" rather than

"realistically probab[le]."[96] Rather, the conduct that satisfies the second-degree murder statute

employs direct physical force, including: shooting the victim,[97] stabbing the victim,[98] hitting the

victim with an object,[99] strangling the victim,[100] and pushing the victim over a railing.[101] All of

the conduct that Kansas has prosecuted and convicted as second-degree murder fits squarely

within or exceeds the physical force the Tenth Circuit has blessed—conduct such as "[h]itting,

slapping, shoving, grabbing, pinching, biting, [and] hair pulling."[102] There is no evidence that de

minimis physical contact has sustained a conviction under the statute.

The Court did find two Kansas intentional second-degree murder cases that involved

indirect applications of physical force. First, in *State v. Burrow*, the defendants were convicted

under a prior version of the intentional second-degree murder statute when they badly beat the

victim, injected him with drugs, struck him on the Adam's apple, and buried him.[103] Thus, both

direct and indirect applications of force were applied to cause death. Second, in *State v.

Naramore*, the defendant was convicted of intentional second-degree murder for his decision to

---

[96] *United States v. Hammons*, 862 F.3d 1052, 1052 (10th Cir. 2017) (citing *Moncrieffe v. Holder*, 569 U.S. 184 (2013)).

[97] *State v. Coryell*, 366 P.3d 666 (Kan. Ct. App. 2016) (gunshot wounds); *State v. Mackey*, 353 P.3d 471, 471 (Kan. Ct. App. 2015) (same); *State v. Jones*, 8 P.3d 1282, 1285 (Kan. Ct. App. 2000) (same).

[98] *State v. McCown* , 957 P.2d 401, 403 (Kan. 1998) (stabbing); *State v. Alvarez*, 336 P.3d 922, 922 (Kan. Ct. App. 2014) (same).

[99] *State v. Bell*, 41 P.3d 783, 786 (Kan. 2002) (hitting with baseball bat).

[100] *State v. Mason*, 708 P.2d 963, 965 (Kan. 1985) (strangling with Army sock).

[101] *States v. Wilson*, 524 P.2d 224, 225 (Kan. 1974) (pushing inmate from fourth tier of cells).

[102] *United States v. Harris*, 844 F.3d 1260, 1265 (10th Cir. 2017) (citing *United States v. Castleman*, 134 S. Ct. 1405, 1414 (2014) (Scalia, J., concurring)).

[103] 561 P.2d 864, 866 (Kan. 1977)

withdraw respiratory support from an eighty-one-year-old diabetic male patient who had suffered a stroke.[104] However, the Kansas Court of Appeals reversed his conviction.[105] These cases do not indicate a "realistic probability" that de minimis physical contact or even indirect physical contact would be prosecuted as second-degree murder.[106]

### iv.  Second-Degree Murder Requiring Use of Physical Force

Second, the court must consider whether shooting, stabbing, hitting someone with an object, strangling, or pushing someone down the stairs fits the definition of physical force under the ACCA and § 4B1.2. As the Tenth Circuit has explained, often the application of §2K2.1 and the ACCA "turns on parsing near-synonyms in decades-old opinions, opinions whose authors did not contemplate that such a loss of liberty" would result.[107] Based on the convictions sustained for second-degree murder under Kansas law, the Court cannot find a "realistic probability" that conduct that would not be "violent force, or force capable of causing physical pain or injury to another" could be prosecuted under this statute.

The Tenth Circuit has not addressed whether murder would qualify as a violent felony under the elements clause. However, the Fourth Circuit recently considered whether a federal second-degree murder in retaliation statute would qualify as a violent felony under the elements

---

[104] 965 P.2d 211, 216 (Kan. Ct. App. 1998).

[105] *See id.* at 224 (finding that a reasonable jury does not have the discretion to disregard substantial expert medical opinions that would exonerate the defendant).

[106] Perhaps such indirect physical force is used to sustain first-degree murder convictions. K.S.A. § 21-3401; K.S.A. § 21-5402 (2011) (prohibiting "the killing of a human being committed . . . [i]ntentionally, and with premeditation"); *State v. Killings*, 340 P.3d 1186, 1196 (Kan. 2015) ("Second-degree intentional murder is a lesser included offense of premeditated first-degree murder because the only difference between the two crimes is the element of premeditation). Many of the indirect physical forces offered, like poisoning, putting up arsenic wallpaper, and shoving a barrier in front of a car, may indicate premeditation, and as such may be prosecuted as first-degree murder. However, this is not the issue before the Court, so the Court will not endeavor to determine whether it is "more theoretical than realistic that conduct (or threatened conduct) not equating to physical force" would be prosecuted as first-degree murder in Kansas. *Harris*, 844 F.3d at 1270.

[107] *United States v. Lee*, No. 16-6288, 2017 WL 2829372, at *4 (10th Cir. 2017).

clause in *In re Irby*.[108]  The statute at issue punished "intentionally kill[ing] another person in retaliation for, inter alia, providing a law enforcement officer with 'any information' regarding 'the commission' of a 'Federal offense.'"[109] The Fourth Circuit adopted the approach taken in *Castleman*, and concluded that while the statute could be satisfied with indirect uses of force, like sprinkling poison, this was still a use of force.[110]  Further, the Fourth Circuit found it goes against common senses that the most morally repugnant crime—murder—would not be a crime of violence "while at the same time permitting many less-serious crime to be so classified."[111]  Thus, the Fourth Circuit held that federal second degree retaliatory murder is a crime of violence under the elements clause "because unlawfully killing another human being requires the use of force 'capable of causing physical pain or injury to another person.'"[112] The language of the statute at issue here tracks very similar to the first clause of the statute at issue in *Irby*— "intentionally kill[ing] another person."  Although this is a holding and approach not yet adopted by the Tenth Circuit, the Court finds this case persuasive as it is the only circuit case applying the elements clause to murder in the ACCA and § 4B1.2 context.

Like the Fourth Circuit, the district courts considering whether murder is a violent felony have resoundingly answered affirmatively.  Several district courts in the Tenth Circuit have also found that second-degree murder is a violent felony under the elements clause.[113] Further, other district courts outside of the Tenth Circuit have found murder is a violent felony under the

---

[108] 858 F.3d 231, 234–35 (4th Cir. 2017).

[109] *Id.* at 234 (citing 18 U.S.C. § 1513(a)(1)(B)).

[110] *Id.* at 236.

[111] *Id.* at 237 (citing *United States v. Alfaro*, 835 F.3d 470, 477–78 (4th Cir. 2016)).

[112] Id. at 236 (citing *United States v. Luskin*, 926 F.2d 372, 379 (4th Cir. 1991)).

[113] *Sarracino v. United States*, No. 16-734, 2017 WL 3098262, at *6 (D.N.M. June 26, 2017) (holding federal second degree murder is a crime of violence); *United States v. Checora*, 155 F. Supp. 3d 1192, 1199 – 1201 (D. Utah Dec. 21, 2015).

elements clause.[114]  The parties do not cite nor is the Court aware of any court, district or appellate level, holding murder is not a violent felony.  As nearly all these courts have explained, it goes against common sense to hold otherwise.

This Court recently considered whether a Missouri second-degree murder statute qualified as a violent felony under the elements clause in *United States v. Watts*.[115]  In *Watts*, the defendant was convicted under the second-degree felony murder statute, which allowed for conviction if a person "committed or attempted to commit any felony and, in the perpetration or attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed . . . ." [116]  This Court noted the expansiveness of the statute, including not requiring the defendant to be the actual killer and the underlying felonies did not have to be violent.[117]  Because the underlying felony used to sustain the conviction may not require "violent force, or force capable of causing physical pain or injury to another," the Court found that second-degree felony murder in Missouri did not meet the elements clause.[118]  Here, the statute is not a felony-murder statute, so there is no issue of an underlying felony used to sustain the conviction being a non-violent felony.  Thus, this case is distinguishable from *Watts*.

Ultimately, the Court concludes second-degree murder meets the elements clause.  It reaches this conclusion without taking a position on the application of *Castleman* to § 4B1.2 and the ACCA.  The Tenth Circuit has not taken such a position on the matter, so this Court declines

---

[114] *United States v. Moreno-Aguilar*, 198 F. Supp. 3d 548, 553 (D. Md. 2016) ("[F]inding that murder is not a crime of violence under the force clause of § 924(c) strains common sense and, more importantly, could lead to the absurd result that this and other statutes."); *United States v. Baez-Martinez*, No. 12-281, 2017 WL 2954621, at *3–6 (D.P.R. June 29, 2017) (holding second-degree murder in Puerto Rico is a violent felony under elements clause).

[115] No. 14-CR-20118-JAR, 2017 WL 411341 (D. Kan. Jan. 31, 2017).

[116] *Id.* at *4 (quoting Mo. Rev. Stat. § 565.021(2)).

[117] *Id.* at *8–9.

[118] *Id.* at *9.

the invitation to do so.  Because the Court concludes that Kansas second-degree murder is only prosecuted with direct applications of force amounting to "violent force," it is not necessary to decide whether the application of indirect force qualifies.  However, the Court acknowledges that there is certainly a question of whether *Perez-Vargas* and prodigy remain good law in light of *Castleman*.  The Tenth Circuit has intimated as much,[119] and to the extent the Tenth Circuit adopts *Castleman*, this statute would undoubtedly still meet the elements clause.  Regardless, second-degree murder in Kansas is a violent felony.

### 3.  Aggravated Battery (K.S.A. § 21-3414(a)(1)(A))

The Government makes one argument for application of the ACCA—aggravated battery as defined in K.S.A. § 21-3414(a)(1)(A) meets the elements clause as it has an element "the use, attempted use, or threatened use of physical force against the person of another."  According to the Government, this is so based on the application of *Castleman* and the Tenth Circuit decision in *United States v. Treto-Martinez*, which held that K.S.A. § 21-3414(a)(1)(C) was a crime of violence.[120]  Alternatively, if the Court were to determine that the ACCA was inapplicable, the Government makes two arguments for application of USSG § 2K1.2—(1) aggravated battery meets the elements clause and (2) aggravated battery meets the generic definition of aggravated assault for purposes of meeting the enumerated offense clause.[121]  For the reasons detailed more fully below, the Court finds that aggravated battery under K.S.A. § 21-3414(a)(1)(A) does meet the elements clause.  The Court need not reach a decision regarding the enumerated offense clause.

---

[119] *United States v. Hammons*, 862 F.3d 1052, 1052 n.5 (10th Cir. 2017).

[120] *United States v. Treto-Martinez*, 421 F.3d 1156, 1158 –59 (10th Cir. 2005).

[121] In the 2015 USSG, Application Note 1 defines crimes of violence to include aggravated assault.  In the 2016 USSG, aggravated assault is listed in the enumerated offense clause.  Therefore, Defendant argues aggravated assault is an enumerated offense, and aggravated battery meets the generic definition of aggravated assault.

### i. Kansas Law on Aggravated Battery

First, the Court must look to how Kansas courts define the aggravated battery statute in order to analyze whether it meets the elements clause. The elements of the conduct prohibited by subsection (a)(1)(A) of the Kansas statute are: (1) intentionally (2) causing great bodily harm (3) to another person (4) or disfigurement (4) to another person.[122]  In *State v. Hobbs*, the Kansas Supreme Court held that the only actus reus prohibited under the aggravated battery statute was "causing great bodily harm to another person or disfigurement of another person."[123]  The Kansas Supreme Court concluded that "[i]t matters not how this is achieved."[124]

The Kansas Supreme Court has also defined the term "bodily harm" within the meaning of the statute. Bodily harm is defined as follows:

> Bodily harm has been defined as any touching of the victim against the victim's will, with physical force, in an intentional hostile and aggravated manner. The word "great" distinguishes the bodily harm necessary in the offense of aggravated battery from slight, trivial, minor or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery.[125]

This definition of "bodily harm" requires that the contact be "in an intentional hostile and aggravated manner."[126]  Hostile is defined as "1. Adverse.  2. Showing ill will or desire to harm. 3. Antagonistic; unfriendly."[127]  And, aggravated means "made worse or more serious by circumstances such as violence, the presence of a deadly weapon, or the intent to commit another crime."[128]  Therefore, subsection (a)(1)(A) requires hostile or aggravated, intentional contact

---

[122] K.S.A. § 21-3414(a)(1)(A).

[123] 340 P.3d 1179, 1184 (Kan. 2015).

[124] *Id.*

[125] *State v. Livingston,* 35 P.3d 918, 922 (Kan. 2001) (internal citation, brackets, and quotation marks omitted).

[126] *Id.*

[127] Black's Law Dictionary 806 (10th ed. 2014).

[128] *Id.*

with the victim that is more than mere touching. Conduct—such as walling an adversary in a crypt, lying to a swimmer about the water safety of a quarry pond, or hanging arsenic-infused wallpaper in a bedroom[129]—would not fall within (a)(1)(A)'s coverage. The obvious implication from such a definition is the amount of physical force required for bodily harm is greater than that necessary for a simple battery. Seemingly, this falls squarely within the definition of "violent force, or force capable of causing physical pain or injury to another person" as opposed to mere offensive touching.[130]

State v. Castro-Lule provides a particularly relevant example for how aggravated battery under K.S.A. § 21-3414(a)(1)(A) is prosecuted in Kansas.[131] Defendant was charged with six counts of aggravated battery and assault, and three counts each of child abuse and child endangerment.[132] The six counts of aggravated battery involved using a tortilla warmer to burn the child's palms, hitting the child with a slat of a chair to knock out his front teeth, using a cord to beat the child resulting in scars and disfigurement, and twisting his arm behind his back to break it.[133] By contrast, beatings and torture of the child were prosecuted as child abuse, and exposure to deplorable and unsafe conditions was prosecuted as child endangerment.[134] Therefore, conduct that would clearly qualify as "physical force" seems to fall within the conduct prosecuted as aggravated battery, but conduct that may fall outside the scope of "physical force" is prosecuted otherwise. Following Tenth Circuit logic in Harris, it is "more

---

[129] Doc. 34 at 29.

[130] United States v. Harris, 844 F.3d 1260, 1266 (10th Cir. 2017).

[131] 309 P.3d 9 (Kan. Ct. App. 2013).

[132] Id.

[133] Id.

[134] Id.

theoretical than realistic that conduct (or threatened conduct) not equating to physical force" would be prosecuted as aggravated battery in Kansas.[135]

### ii. Aggravated Battery Requiring Use of Physical Force

Next, based on the Kansas substantive definition of aggravated battery, the Court must consider whether the conduct required to meet the aggravated battery statute constitutes the "use, attempted use, or threatened use of physical force"—that is, "violent force"—against the person of another. In *United States v. Miller*, a court in this District considered whether a more recent version of the Kansas aggravated battery statute, which read "knowingly causing bodily harm to another person ... in any manner whereby great bodily harm, disfigurement or death can be inflicted," met the elements clause.[136] The Court first noted that while aggravated battery encompasses conduct like cutting brake lines or poisoning beverages, "[i]n practice, Kansas aggravated battery can only be committed by a defendant who directly applies force."[137] The Kansas Supreme Court defined "bodily harm" as "any touching of the victim against the victim's will, with physical force, in an intentional hostile and aggravated manner."[138] The Court concluded that "[t]his language clearly indicates that the statute does not encompass 'situations where bodily harm can be caused without physical contact' as [the defendant] suggests. Rather, the statute only encompasses situations in which the defendant touched the victim with physical force."[139] Thus, the Court concluded Kansas aggravated battery met the elements clause.[140]

---

[135] *Harris*, 844 F.3d at 1270.

[136] No. 16-10106-EFM, 2017 WL 2591632, at *1 (D. Kan. June 1, 2017) (considering K.S.A. § 21-5413(b)(1)(B)).

[137] *Id.* at *4.

[138] *Id.* at *5 (quoting *State v. Whitaker*, 917 P.2d 859, 865 (1996)).

[139] *Id.* (citation omitted).

[140] *Id.*

The Government argues *United States v. Treto Martinez*[141] supports the view that a violation of Kansas's aggravated battery statute constitutes a violent felony under the elements clause. In *Treto-Martinez*, the Tenth Circuit found that a defendant's conviction under K.S.A. § 21-3414(a)(1)(C), which prohibits "intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted," involved the use or threatened use of force.[142] The Tenth Circuit noted that no matter the instrumentality of contact "if the statute is violated by contact that can inflict great bodily harm, disfigurement or death, it seems clear that, at the very least, the statute contains as an element the 'threatened use of physical force.'"[143] The Tenth Circuit focused on the likely result of the crime in an ordinary case to come to such a conclusion.

Defendant responds that this Court should reject *Treto-Martinez* and follow the Tenth Circuit approach in *United States v. Perez-Vargas*.[144] Defendant posits that *Perez-Vargas* requires the court to focus strictly on the elements of the offense, but *Treto-Martinez* focuses on what occurs during a typical violation of the statute. Defendant argues that the 2016 Supreme Court case *Mathis v. United States*[145] endorses the approach in *Perez-Vargas*. Defendant contends that the approach in *Treto-Martinez* leads to guesswork—deciding whether a crime has the potential for the defendant to do something which satisfies the ACCA's or § 4B1.2's force clause. Defendant also acknowledges that this district has been split on the applicability of

---

[141] *United States v. Treto-Martinez*, 421 F.3d 1156 (10th Cir. 2005).

[142] *Id.* at 1158 – 59.

[143] *Id.* at 1160.

[144] 414 F.3d 1282 (10th Cir. 2006).

[145] 136 S. Ct. 2243 (2016) ("How a given defendant actually perpetrated the crime – what we have referred to as the 'underlying brute facts or means' of commission, makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence.").

*Perez-Vargas*, but Defendant argues that this is because (1) the decisions rejecting *Perez-Vargas* were prior to *Mathis* and (2) *Perez-Vargas* was decided prior to the Tenth Circuit deciding reckless conduct would not qualify for enhancement.

The Court disagrees with Defendant that the approach taken in *Treto-Martinez* is contrary to *Mathis*. This is especially so in light of *Harris*, which looked at how aggravated robbery is prosecuted in Colorado to determine whether physical force is required to violate the statute, and the progeny of cases following *Harris*. The Court must look to the elements of the crime with analysis of how the crime is actually prosecuted under state law because it may be "more theoretical than realistic that conduct (or threatened conduct) not equating to physical force" would be prosecuted.[146]

The Court also disagrees with Defendant that *Treto-Martinez*'s analysis of K.S.A. § 21-3414(a)(1)(C) is not applicable to K.S.A. § 21-3414(a)(1)(A). The Court recognizes that the language of the two subsections does not directly track—whereas K.S.A. § 21-3414(a)(1)(C) requires "intentionally *causing* physical contact . . . whereby great bodily harm, disfigurement or death" may result, K.S.A. § 21-3414(a)(1)(A) omits such physical contact and focuses solely on the resulting injury of "*causing* great bodily harm." However, even post-*Perez-Vargas*, the Tenth Circuit has recognized that its opinion in *Treto-Martinez* "makes clear that any conviction under that statute [K.S.A. § 21-3414(a)] satisfies the guidelines definition of a conviction for a crime of violence."[147] The Tenth Circuit seemingly continues to rely on *Treto-Martinez* as binding precedent.[148] Because this statute requires intentional conduct coupled with causation of

---

[146] *United States v. Harris*, 844 F.3d 1260, 1270 (10th Cir. 2017).

[147] *United States v. Rios-Zamora*, 599 F. App'x 347, 348 (10th Cir. Apr. 10, 2015) (unpublished) (analyzing crimes of violence for purposes of USSG § 2L1.2(b)(1)(A)(ii)).

[148] *United States v. Boyd*, No. 17-2007, 2017 WL 1404180, at *2 (10th Cir. Apr. 20, 2017), *cert. granted*, *Boyd v. United States*, No. 17-5413; *United States v. Mitchell*, 653 F. App'x 639 (10th Cir. June 29, 2016) (relying in part on *Treto-Martinez* in concluding that defendant's use of a dangerous weapon to commit assault necessarily

great bodily harm, this statute falls squarely within the holding of *Treto-Martinez*. Based on the foregoing analysis, the Court is bound by *Treto-Martinez* and *Rio-Zamora*, which is consistent with analysis of the statute above. In conclusion, the Court finds that K.S.A. § 21-3414(a)(1)(A) necessarily involves the use of physical force—namely, violent force—and meets the elements clause of the ACCA and § 4B1.2.

## B.    Objection Number Three

Defendant argues that his 2013 conviction for possession with intent to distribute methamphetamine under K.S.A. § 21-5705(a)(1) cannot serve as a predicate "controlled substance offense" under USSG § 4B1.2, or a "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii). Defendant cites *United States v. Madkins*, in which the Tenth Circuit addressed whether a conviction for "possession with intent to sell cocaine and marijuana" qualified as a controlled substance offense within the meaning of § 4B1.2.[149] The defendant in *Madkins* was convicted under K.S.A. 65-4161(a) (2001), which made it "unlawful for any person to sell, *offer for sale* or have in such person's possession with intent to sell, deliver, or distribute; prescribe; administer; deliver; distribute; dispense or compound any" narcotic or hallucinogenic drugs.[150] The court noted that the Guidelines define a controlled substance offense for purposes of the career-offender designation as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession

---

includes as an element the threatened use of physical force). *See also United States v. McMahan*, No. 16-2139, 2016 WL 6083710, at * 3 (D. Kan. Oct. 17, 2016) (recognizing that the court is bound by the Circuit's decision in *Treto-Martinez*).

[149] 866 F.3d 1136, 1143–48 (10th Cir. 2017).

[150] *Id.* at 1145 (emphasis added).

of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.[151]

Applying the categorical approach, the court concluded that

> The elements of Madkins's prior offenses of conviction do not categorically match the elements in § 4B1.2(b), because Kansas law defines "sale" to include an "offer to sell." And since an offer to sell is broader than distribution as defined in the Guidelines, Madkins's prior offenses are not controlled substance offenses for purposes of the career-offender enhancement.[152]

Defendant argues the reasoning in *Madkins* applies equally in this case. Defendant was convicted of possession with intent to distribute methamphetamine under K.S.A. § 21-5705(a)(1). Section 21-5705(a)(1) states, "[i]t shall be unlawful for any person to distribute or possess with the intent to distribute any of the following controlled substance analogs thereof."[153] K.S.A. § 21-5701(d) in turn defines "distribute" as:

> the actual, constructive or attempted transfer from one person to another of some item whether or not there is an agency relationship. "Distribute" includes, but is not limited to, sale, *offer for sale* or any act that causes some item to be transferred from one person to another. "Distribute" does not include acts of administering, dispensing or prescribing a controlled substance as authorized by the pharmacy act of the state of Kansas, the uniform controlled substances act or otherwise authorized by law.[154]

Defendant argues that because § 21-5405(a)(1) incorporates "offer for sale" into the definition of "distribute," the statute criminalizes conduct broader than the federal definition of "distribution" as set forth in the Guidelines. Defendant argues that the analysis in *Madkins* applies equally to the ACCA, which defines the term "serious drug offense" as "an offense under State law,

---

[151] *Id.* at 1144 (quoting USSG § 4B1.2(b)).

[152] *Id.* at 1145.

[153] K.S.A. § 21-5705(a)(1).

[154] K.S.A. § 21-5701(d) (emphasis in original).

involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance offense."[155]

The Government did not respond to Defendant's Objection Number Three. The Court agrees with Defendant that his prior conviction for possession with intent to distribute methamphetamine under K.S.A. § 21-5705(a)(1) cannot serve as a predicate "controlled substance offense" or "serious drug offense" in support of enhancements under either USSG § 2K2.1(a) or the ACCA. As in *Madkins*, the statute under which Defendant was convicted here incorporates "offer[s] for sale" into its definition of "distribution" of controlled substances.[156] As *Madkins* instructs, a conviction under § 21-5705(a)(1) cannot support an enhancement pursuant to USSG § 2K2.1(a) because this definition of "distribute" does not "categorically match the elements in § 4B1.2(b)."[157] Furthermore, the Court finds that the ACCA's definition of "serious drug offense" is substantially similar to the Guidelines definition of "controlled substance offense," in that neither definition contemplates "offer[s] for sale."[158] Thus, a conviction under § 21-5705(a)(1) does not support an enhancement under the ACCA.

For the reasons explained above, Defendant's 2013 conviction for possession with intent to distribute methamphetamine cannot support an enhancement under either USSG § 2K2.1(a) or the ACCA. Therefore, the Court grants Defendant's Objection Number Three to the PSR.

---

[155] 18 U.S.C. § 924(e)(2)(A)(ii).

[156] K.S.A. §§ 21-5705(a)(1), 5701(d); *Madkins*, 866 F.3d at 1146 n.5.

[157] *Madkins*, 866 F.3d at 1145.

[158] *Compare* 18 U.S.C. § 924(e)(2)(A)(ii) ("As used in this section—the term 'serious drug offense'— means an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance") *with* USSG § 4B1.2 (defining "controlled substance offense" as an offense that prohibits the "manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent intent to manufacture, import, export, distribute, or dispense").

### III.    Conclusion

In conclusion, the Court finds Defendant has two qualifying convictions for purposes of application of USSG § 2K2.1(a) and the ACCA.  Second-degree murder under K.S.A. § 21-3402(a) qualifies as a crime of violence for purposes of application of USSG § 2K2.1(a) and a violent felony for purposes of application of the ACCA.  Aggravated battery under K.S.A. § 21-3414(a)(1)(A) qualifies as a crime of violence and a violent felony.  But possession with intent to distribute methamphetamine under K.S.A. § 21-5705(a)(1) does not qualify as a "controlled substance offense" for purposes of application of USSG 2K2.1(a) or a "serious drug offense" for purposes of application of the ACCA.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Objection Number One to the PSR is **overruled** as to application of USSG § 2K2.1(a) and as to application of the ACCA.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant's Objection Number Two to the PSR is **overruled**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant's Objection Number Three is **sustained** as to application of USSG § 2K2.1(a) and as to application of the ACCA.

**IT IS FURTHER ORDERED BY THE COURT** that the United States Probation Office shall file an amended PSR that reflects the Court's findings above.  The Court shall set this matter for sentencing subsequent to the filing of the amended PSR.

**IT IS SO ORDERED.**

Dated: September 18, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE